IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAUREEN M. BOLES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA WATER DEPARTMENT | : | NO. 06-1609 |

MEMORANDUM

Dalzell, J.                                                 May 21, 2010

       Plaintiff Laureen Boles sues her employer, defendant City of Philadelphia Water Department[1] ("the City"), for employment discrimination under Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.[2] Specifically, Boles asserts a claim of disparate treatment discrimination based on race.

       The City has moved for summary judgment, Boles responded, and the City replied. The City contends that Boles

---

[1]The Complaint names the City of Philadelphia Water Department as the defendant. But 53 P.S. § 16257 requires all suits against any department of the City to be brought in the name of the City itself because the departments of the City do not have independent corporate existence. City of Philadelphia v. Glim, 613 A.2d 613, 616 (Pa. Commw. 1992). Therefore, we will treat the complaint as having been brought against the City of Philadelphia.

[2]Because Pennsylvania courts have interpreted the Pennsylvania Human Relations Act interchangeably with Title VII, our analysis is the same under these two statutes. Weston v. Pennsylvania, 251 F.3d 420, 426 n.3 (3d Cir. 2001). For ease of readability, we will refer to Title VII throughout this Memorandum, but our findings and analysis are the same under both statutory schemes.

cannot establish a prima facie case for her claims, and that it had legitimate, nondiscriminatory reasons for demoting her and denying her request for tuition reimbursement. Boles argues that the City's reasons for demoting her and denying her tuition reimbursement request are pretextual.

For the reasons we discuss in detail below, we will grant the City's motion and dismiss Boles's complaint.

I.  **Factual Background**

Laureen Boles is an African-American woman who has worked for the City since 1986. Compl. at ¶ 4; Def.'s Ex. B-1. In 1987, she was promoted to Civil Engineer, and in 1992 was promoted to Water Transport Engineer. Def.'s Ex. B-1. In 2000, the City transferred her to the newly-created Office of Watersheds ("OOW") and in 2001 she was promoted to Sanitary Engineer III. Id.

The City has a tuition reimbursement program for employees pursuing graduate studies. Def.'s Ex. B-2. The employee handbook provides that the "program cannot be considered a right of employment." Id. The City's policy is that the employee may only use paid or unpaid leave for graduate studies, with supervisory approval. Def.'s Ex. B-3, B-4, B-5, B-6. In April of 2002, Boles requested permission from Howard Neukrug, Director of the OOW, to pursue a master's degree in City and

Regional Planning. Def.'s Ex. C, Affidavit of Howard Neukrug; Howard Neukrug Dep., Def.'s Ex. A-5 ("Neukrug Dep.") at 8-9. Neukrug approved her request, but hand-wrote on her approval, "I am concerned over classes during working hours, and this will be addressed on a case-by-case basis with your supervisor." Def.'s Ex. C-1.

On May 19, 2003, Boles stopped showing up for work, eventually reporting that she was sick. Def.'s Ex. B at ¶ 9; Def.'s Ex. B-7. Neukrug, concerned about Boles's work performance, wrote a special performance report in which he rated her performance "unacceptable" overall. May 20, 2003 Special Performance Report, Def.'s Ex. A-8. Neukrug never gave Boles the report because she left on paid sick leave before he could -- although he tried to give it to her (without success) while she was absent. Neukrug Dep. at 9:1-20. For over a year, Boles was absent from work. Def.'s Ex. B at ¶ 9. She returned to the OOW in June of 2004. Id.

Unbeknownst to the City, while Boles was ostensibly too sick to go to work,[3] she was also a full-time student in a masters degree program at the University of Pennsylvania. Def.'s Ex. B at ¶¶ 11-12; Def.'s Ex. B-9. When Boles returned to work

---

[3] Ferris Bueller's Day Off (Paramount Pictures, 1986) may be relevant here: "This is my ninth sick day. It's tough coming up with new illnesses. If I go for ten, I'll have to barf up a lung so I'd better make this one count."

3

on June 28, 2004, she submitted vouchers seeking reimbursement for tuition expenses that she incurred while out on paid leave. Def.'s Ex. B at ¶¶ 11-12; Def.'s Ex. B-9. It does not appear that she was ever officially informed that her tuition reimbursement request had been denied. Over two years later (on August 11, 2006), however, Bernard Brunwasser, the Philadelphia Water Department Commissioner, sent Boles a letter informing her that her use of paid sick leave to attend a rigorous masters program "constituted an improper use of the sick leave privilege," and that she would have to return the money that the City had paid her while she was out on paid sick leave. Pl.'s Ex. 13.

Upon her return to work, Dr. Christopher Crockett, a Sanitary Engineer IV, became Boles's supervisor. Crockett Dep. at 16:8-11; Def.'s Ex. A-9 ("Crockett Dep."). At that time, Neukrug did not discuss with Crockett the performance report he authored, but never gave, to Boles. Def. Ex. A-5 at 36:7-15; Def. Ex. A-9 at 35:20-36:21. At some point (Boles does not allege exactly when) during a discussion with Neukrug, he allegedly advised her that "he had difficulty communicating with her because she is from the Savannah, Georgia area." Compl. at ¶ 8. In his deposition, Neukrug denies ever telling Boles this. Neukrug Dep. at 40-41. Boles submitted no evidence to support

her claim that this conversation ever happened. Boles also claims that Neukrug "ranted and raved" about receiving an email about the promotion of a book signing event by African-American authors. Pl.'s Resp. at 8. Neukrug claimed in his deposition that he had been complaining about receiving mass emails, not about African-American author book signings. Neukrug Dep. at 26. Boles submitted no evidence to contradict the City's evidence on this point.

Boles is the only African-American among the twelve Sanitary Engineers in the OOW, and the only African-American that Crockett has ever supervised. Crockett Dep. at 98-99. Crockett assigned Boles to several projects, the most significant among them was the Watershed Technology Center project (the "Project"). Def.'s Ex. A-9 at 17:6-14. On June 29, 2004, Crockett sent Boles an email outlining certain tasks for the Project, including interviewing staff members. Roughly one month later, Crockett met with Boles to discuss how the project was progressing and discovered that she had not completed any staff interviews. Pl.'s Resp. at ¶ 24. Crockett and Boles met again in August, but Boles still had not interviewed any staff members and had produced no new work on the Project in the intervening month. On August 20, 2004, Crockett issued a special performance report for Boles rating her work performance "unacceptable" for failing to

5

(1) meet critical deadlines, (2) communicate with her supervisor, and (3) follow City policies and procedures "despite warnings." Def.'s Ex. A-10.

On August 26, 2004, Neukrug met with Boles to discuss Crockett's special performance report. Plaintiff told him that she thought her work was "good" and that she was busy working on a report. When Neukrug asked her for a copy of the report, she told him that she was too busy to make him a copy. Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Def.'s MSJ") at ¶ 28; Pl.'s Resp. at ¶ 28. Crockett set new, intermediary deadlines for the Project. Crockett Dep. at 48:13-19. On September 17, 2004, Crockett issued Boles a written reprimand because she had failed to improve her performance and was becoming increasingly disruptive and insubordinate. Def. Ex. A-12. Crockett and another manager, Brian Marengo, met with Boles to try to salvage the Project. At that meeting, Boles gave them the same material she had provided Crockett in August, but in a larger font. Def.'s Mot. S.J. at ¶ 34; Pl.'s Resp. at ¶ 34.

On October 6, 2004, Boles was reassigned to another manager, Joanne Dahme, a Sanitary Engineer IV. The City removed Boles from the Project and then assigned a consultant with a professional background similar to hers to finish it. Def's MSJ

at ¶ 36; Pl.'s Resp. at ¶ 36. Boles admits that she spent 440 hours on the Project without ever completing it. Pl.'s Resp. at ¶ 37.

Finally, the City held an internal disciplinary hearing for Boles at which Crockett and Boles both testified. The hearing officer was Francis Meiers. Def's MSJ at ¶ 38; Pl.'s Resp. at ¶ 38. After the hearing, Meiers recommended to the City that it demote Boles. Def.'s Ex. B-10. At some point before the hearing, Boles sent a letter to then-Councilman Michael Nutter alleging harassment by the City. Def.'s Ex. A-13. Nutter asked the Water Department Commissioner to look into the claim. Def.'s Ex. A-13. On December 10, 2004, the City served Boles with a Notice of Intention to Demote, detailing the reasons it intended to demote her. Def.'s Ex. B-11.

On December 10, 2004, Boles sent a memorandum to Commissioner Brunwasser appealing her demotion, asking to speak with him personally, and making references to "continued harassment." Def.'s Ex. A-14. On December 28, 2004, Commissioner Brunwasser sent a letter to Boles explaining that any response to the Notice should be made in writing and gave her until January 6, 2005 to respond. Def.'s Ex. A-15. Instead of submitting a written response, on January 5, 2005 Boles sent another memorandum requesting to speak with the Commissioner.

Def.'s Ex. A-16.  Two days later, Commissioner Brunwasser finalized the demotion, but assured Boles that if she provided him with the "specifics of the allegations" she was making, he would look into them.  Def.'s Ex. A-17.  Boles never responded to that letter.  Brunwasser issued a Notice of Demotion to Boles on January 7, 2005.  Def.'s Ex. B-12.

Boles appealed her demotion to the Civil Service Commission which, on February 10, 2006, granted her appeal and ordered that she be restored to the position of Sanitary Engineer III.  Def.'s Ex. A-18, Commission Opinion, February 10, 2006. The City appealed that decision.  Both the Court of Common Pleas and the Commonwealth Court disagreed with the Civil Service Commission, finding that the Commission's decision was not supported by substantial evidence.  Def.'s Ex. A-19, <u>City of Philadelphia v. Civil Service Commission: Appeal of Laureen Boles</u>, No. 409, Opinion, DiVito, J., (Ct. Common Pleas Feb. 13, 2008); <u>aff'd</u>, 965 A.2d 389 (Pa. Commw. Ct. 2009).  Both courts found that the City had just cause to demote Boles.  Def.'s Ex. A-19 at 3; <u>Boles</u>, 965 A.2d at 394.  Boles did not appeal her demotion to the Pennsylvania Supreme Court.

Back in March of 2005, after her demotion, Boles had also filed a complaint with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission.

8

Def.'s Ex. A-20. On April 11, 2006, Boles filed this case in the Philadelphia Court of Common Pleas, and six days later the City removed it to this Court.

II. **Analysis**[4]

The City moves for summary judgment against Boles on all counts of the complaint, claiming that she cannot demonstrate a genuine issue of material fact to support her claims that she

---

[4]Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Whenever a factual issue arises which cannot be resolved without a credibility determination, the Court must credit the non-moving party's evidence over that presented by the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 (1986). Once the moving party carries this burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'" Id. at 587 (quoting Fed. R. Civ. P. 56(e)). The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). It is not enough to discredit the moving party's evidence, the non-moving party is also required to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Liberty Lobby, 477 U.S. at 257. A proper motion for summary judgment will not be defeated by merely colorable evidence or evidence that is not significantly probative. See Liberty Lobby, 477 U.S. at 249-50. "[T]he burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

9

was demoted and denied tuition reimbursement because of her race.

### A. Discrimination under Title VII

Boles's claims of discrimination arise under Title VII and thus are governed by the familiar burden-shifting framework ordained in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 522 (3d Cir. 1992). To make her claim, Boles must first establish a prima facie case of discrimination. The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. Finally, the plaintiff has an opportunity to prove by a preponderance of the evidence that the employer's nondiscriminatory reason is pretextual. Id. at 804; Texas Dep't Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). The McDonnell Douglas framework "serves to bring the litigants and the court expeditiously and fairly to [the] ultimate question" of whether the City intentionally discriminated against Boles. Burdine, 450 U.S. at 253. In other words, that framework helps courts determine whether unlawfully discriminatory reasons motivated an employer to take an action against an employee.

### 1. Disparate Treatment[5]

The City has moved for summary judgment on plaintiff's disparate treatment discrimination claim. To establish a <u>prima facie</u> case for such a claim, a plaintiff usually must show that "(1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of her termination give rise to an inference of discrimination." <u>Red v. Potter</u>, 211 Fed. Appx. 82, 83 (3d Cir. 2006).

Although courts often use these factors, they do not constitute a rigid formula. <u>E.E.O.C. v. Metal Service Co.</u>, 892 F.2d 341, 347 (3d Cir. 1990). More generally, Boles can establish her <u>prima facie</u> case by offering "sufficient evidence . . . such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons." <u>Id.</u> at 348. The burden-shifting framework, beginning with the <u>prima facie</u> case, offers the plaintiff an indirect way to prove that the employer acted

---
[5]The City argues that Boles's claim of disparate treatment with regard to her demotion is precluded because the state courts had already determined that her demotion was for just cause. Because we find for the City without the aid of the decisions in the state courts -- interesting as they are -- we need not address this defense.

because of discriminatory reasons. Causation is thus the central question of the prima facie inquiry. See Sarullo v. U.S. Postal Svc., 352 F.3d 789, 798 (3d Cir. 2003).

The City concedes the first three factors of the test, i.e., that (1) Boles is a member of a protected class, (2) who was qualified for her position as a Sanitary Engineer III, and (3) that her demotion was an adverse employment action. Def.'s MSJ at 22. The only remaining issue at this stage of the inquiry, then, is whether Boles has shown that "similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of her termination give rise to an inference of discrimination." Red, 211 Fed. Appx. at 83. In its motion for summary judgment, the City contends that Boles has not done so, and we agree.

Under the McDonnell Douglas framework, "a prima facie case ... raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). In other words, the burden-shifting scheme outlined in McDonnell Douglas is intended to locate a causal connection -- which Boles must prove -- between impermissible behavior toward

12

Boles and her demotion and/or the denial of her request for tuition reimbursement. See Sarullo, 352 F.3d at 798.

With regard to her demotion, Boles admits that there is no evidence that any other Sanitary Engineers had performance issues similar to hers and who were not disciplined or promoted. Pl.'s Resp. at 15.  Boles argues instead that three circumstances raise an inference of discrimination in connection with the City's decision to demote her and to not grant her request for tuition reimbursement: (1) Boles contends that she is the only African-American Sanitary Engineer in the OOW, and that while this is not enough to establish the fourth element, this fact, together with others, provides evidence of discrimination; (2) she is the only African-American employee that Crockett ever supervised, a fact which Boles concedes also does not in itself establish the fourth element; and (3) Crockett disciplined her twice in the span of a month for failing to perform her duties even though those duties were not prescribed by any City policy or directive from him, such as using email and adhering to deadlines.  She also claims that it is "suspect" that the Watershed project to which she was assigned had been considered a low priority and then suddenly became a high priority when she began to work on it.  Pl.'s Resp. at 15-16.

The first two contentions do not support an inference of discrimination. Indeed, plaintiff's first "circumstance" is merely a restatement of the first prong of the test -- she is a member of a protected class. The second "circumstance" -- that she is the only African-American employee Crockett had ever directly supervised -- also does not support an inference of discrimination, as Boles acknowledges. The fact that Crockett disciplined her twice in the span of a month, without more, does not establish the fourth element, even in conjunction with the fact that Boles is the only African-American that Crockett has ever supervised. And we disagree that it is "suspect" (whatever that means) that her project became a higher priority once she was actually assigned to work on it. Viewing the sufficiently pleaded facts in the light most favorable to Boles, we conclude that she has failed to establish a prima facie case of disparate treatment, and we will grant the City's motion for summary judgment as to that claim.

Even if Boles had established a prima facie case, the City has sufficiently shown that it had legitimate, non-discriminatory reasons for both demoting her and denying her request for tuition reimbursement. Furthermore, Boles has failed to demonstrate that its reasons were pretextual.

### 2. Retaliation and Hostile Work Environment

Boles does not attempt to establish a prima facie case of disparate treatment with regard to her claim that the City's denial of her request for tuition reimbursement was discriminatory, and therefore that claim must fail. Instead, Boles alleges in her response to the City's motion for summary judgment that its denial of her request for tuition reimbursement was retaliatory and that she was subjected to a hostile work environment. But Boles does not allege any facts in her complaint that could be construed as a claim of either retaliation or a hostile work environment.

To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity; she suffered an adverse employment action either after or contemporaneously with the protected activity; and there was a causal connection between the protected activity and the adverse employment action. Red, 211 F. App'x at 84. Boles does not allege in her complaint that she engaged in protected activity or that her engagement in a protected activity resulted in an adverse employment action. We cannot consider Boles's allegations of retaliation in her response to the City's motion for summary judgment. Our Court of Appeals has explained that "[a] plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment."

15

Bell v. City of Philadelphia, 275 F. App'x 157, 160 (3d Cir. 2008)(quoting Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996))(internal quotation marks omitted).

We also cannot entertain Boles's claim of a hostile work environment (which she also raises for the first time in her response to the City's motion) because she has not exhausted her administrative remedies. We must limit our inquiry to acts that are "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996)(citing Waiters v. Parsons, 729 F.2d 233 (3d Cir. 1984)). Although this standard does not necessarily preclude a plaintiff from asserting a claim for the mere failure to check a box on an EEOC Charge Form, it does prevent a plaintiff from "greatly expand[ing] an investigation simply by alleging new and different facts when [s]he [is] contacted by the Commission following [her] charge." Hicks v. ABT Assoc., Inc., 572 F.2d 960, 967 (3d Cir. 1978). Because the EEOC is required to serve notice on the employer against whom the charges are made, this standard also allows an employer to be put on notice of the claims likely to be filed against it. See 42 U.S.C. §§ 2000e-5(b), (e)(1).

Even interpreting Boles's EEOC charge liberally, her hostile work environment claim is still not within the scope of

the charge. In <u>Anjelino v. New York Times Co.</u>, 200 F.3d 73, 94-95 (3d Cir. 1999), our Court of Appeals held a hostile work environment claim was within the scope of an initial EEOC charge because it alleged the plaintiff was subjected to an "abusive atmosphere," finding this phrase interchangeable with "hostile work environment."

But there is no cognate or analogous language in Boles's EEOC charge that could give rise to a hostile work environment claim. Boles's Form 5 Charge of Discrimination identified only one allegation that could possibly be construed as evidence of race discrimination and that relates to her supervisor's statement that he had "difficulty communicating with [her] because of who [she is] and where [she] come[s] from. [She] is from Savannah Georgia." Def.'s Ex. A-20. Boles cannot under Fed. R. Civ. P. 56(e) rely on mere allegations. Instead, she must set forth "specific facts" showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). She must also present something more than mere allegations, general denials, vague statements, or suspicions. <u>Trap Rock Indus., Inc. v. Local 825</u>, 982 F.2d 884, 890 (3d Cir. 1992). Boles does not present any evidence to support her claim regarding Neukrug's alleged statement -- the only averment that could (charitably) be

17

construed to relate to her race.  Notably, Boles also did not check the box indicating her charge was a "continuing action."

Boles has not, therefore, exhausted her administrative remedies with regard to the hostile work environment claim.  We thus cannot consider her claims of retaliation or a hostile work environment.

### III. <u>Conclusion</u>

Because Boles neither established her <u>prima facie</u> case for her disparate treatment discrimination claim nor demonstrated that the City's legitimate, nondiscriminatory reason for demoting her was pretextual, we will grant the City's motion for summary judgment and enter Judgment in favor of it.

BY THE COURT:


\_\_\s\Stewart Dalzell